Leon B. DE LONG, T/A DeLong Engineering and Construction Co., and DeLong Corporation, a Delaware Corporation

v.

UNITED STATES.

No. 146–57.

United States Court of Claims.
July 13, 1959.

John L. Ingoldsby, Jr., Washington, D. C., for plaintiff. Patrick J. Head, Washington, D. C., was on the briefs.

Clare E. Walker, New York City, with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

LARAMORE, Judge.

This is a suit by plaintiff[1] for expenses incurred under a 90-day cancellation clause in a shipyard lease obtained under the original specification of a Government contract, but not used because of changes in addenda to the contract.

The case arises on plaintiff's motion and defendant's cross-motion for summary judgment, and presents only the question as to whether costs incurred on a shipyard facility not used in the performance of a cost-plus-fixed-fee contract are allowable.

The facts which are not in dispute are these: In January 1952, discussions and negotiations began between plaintiff and the Transportation, Research and Development Station of the Department of the Army for a cost-plus-fixed-fee contract for the construction of self-elevating barges.

On February 21, 1952, one Burt B. Rand, acting as attorney for plaintiff in the negotiations, advised defendant by letter that plaintiff intended to perform the contract at the Wainwright Shipyard at Panama City, Florida, and that DeLong intended to acquire ownership of the yard (either in his own name or jointly with corporations owned or controlled by him) within the next 60 days. At that time the shipyard was owned by the United States.

As a result of the negotiations, on March 14, 1952, DeLong entered into a cost-plus-fixed-fee contract with the Transportation Corps of the Army, which contract was dated February 1, 1952, and was assigned No. DA44–177–TC–96.

The contract provided for the construction of four barges, 500 feet in length, the largest steel barges ever constructed in the United States. At the time of drafting the contract, it was the consensus of both parties, and a fact, that Wainwright Shipyard at Panama City was the only shipyard available for such construction. Accordingly, the Chief of Staff of the Department of the Army in a memorandum to the Chief of the Transportation Corps, required that approval of the contract would be contingent upon the contractor having available the Wainwright Shipyard facilities.

To comply with this requirement DeLong negotiated with the Seaboard Machinery Corporation, the then lessee of a portion of the Wainwright Shipyard, for Seaboard to obtain a lease for the remainder from the General Services Administration. Seaboard then leased from the United States and DeLong subleased from Seaboard the facilities of said shipyard. Both the lease and the sublease were dated March 14, 1952, and contained identical 90-day cancellation clauses.

Article II of the lease from Seaboard recited that the purpose for which the facilities were leased was for construc-

---

[1.] Plaintiff, DeLong Corporation, is the successor in interest to plaintiff, Leon B. DeLong t/a DeLong Engineering and Construction Co., and will hereinafter be used interchangeably.

tion, outfitting, assembly and other related purposes of the equipment, materials, items and services described in the contract now being considered, which contract was executed subsequently but on the same day as the aforementioned leases. The contract bears the date of February 1, 1952.

First Modification, Supplemental Agreement No. 1 to the contract, dated March 14, 1952, resulted and provided in pertinent part as follows:

"1. The Contractor represents, as an inducement to the Government to award the Principal Contract, that the facilities of the Wainwright Shipyard, Panama City, Florida, are available to the Contractor for the performance of the Principal Contract and will be available during all of the time required for its performance. It is understood that this representation of availability of facilities is subject to any and all provisions of Federal Law, Executive Order and applicable Federal regulations relating to National Industrial Reserve Properties.

"2. That the Contractor will not be reimbursed under the provisions of the *Principal Contract for any* cost incurred in the performance of the contract for any major repair or rehabilitation of the Wainwright Shipyard."

Supplemental Agreement No. 2 to the contract, dated April 25, 1952, reduced the length of the barges from 500 feet to 427 feet each. Supplemental Agreement No. 2 reads as follows:

"This Supplemental Agreement No. 2 entered into this 25th day of April 1952 by and between the United States of America (hereinafter referred to as the "Government"), represented by the Research Contracting Officer executing this Supplemental Agreement (hereinafter referred to as the "Contracting Officer") and Leon B. DeLong, an individual trading as DeLong Engineering and Construction Company (hereinafter referred to as the "Contractor"):

"Witnesseth That:

"Whereas, under date of 1 February 1952, the parties hereto entered into Contract No. DA 44–177–TC–96 (hereinafter referred to as the "Contract") for the construction of certain self-elevating barges at a total estimated cost of Fourteen Million Nine Hundred Five Thousand Dollars ($14,905,000.00); and

"Whereas, in order to comply with the conditional approval of the contract by the Assistant Chief of Staff, G–4, Department of the Army, the parties executed a first modification to the contract providing, inter alia, that the Contractor represented that the facilities of the Wainwright Shipyard, Panama City, Florida, were available to the Contractor for the performance of the contract, and that the Contractor would not be reimbursed for any costs incurred in any major repair or repair or rehabilitation of such yard; and

"Whereas, subsequent to the execution of the contract, the parties have agreed to reduce the length of certain of the barges required to be produced under the contract from 500 feet to approximately 427 feet, such reduction in length resulting from engineering studies made subsequent to the execution of the contract; and

"Whereas, the Contractor has represented that the reduction in the length of the barges has made it more feasible to produce such barges in shipyards other than the Wainwright Shipyard at Panama City, Florida, because of economy in cost and speed of production; and

"Whereas, by reason of the reduction in the length of the barges and the consequent decrease in the amount of work to be performed by the Contractor under the contract, the parties have negotiated an equitable adjustment of the fixed fee pro-

vided to be paid the Contractor under the contract, but that because of increase in cost of certain materials, the total estimated cost exclusive of fee, shall remain unchanged; and

"Whereas, the parties desire to amend the contract to reflect all of such agreements; and

"Whereas, this Supplemental Agreement No. 2 is deemed to be in the best interest of the Government and is authorized by the Armed Services Procurement Act of 1947 (Public Law 413, 80th Congress) [1];

"Now, Therefore, the parties hereto do mutually agree as follows:

"1. Clause 1, Statement of Work, Item 1 b. and Item 2 are hereby amended to provide that barges provided in the contract to be of 500-foot length shall be approximately 427 feet in length, and that such barges shall be equipped with such numbers of caissons, air jacks, mechanical grippers, air compressors, welders, cranes and other equipment and machinery as may be approved or directed by the Research Contracting Officer. It is agreed that the 427-foot Sea Island Terminal Barges to be produced under Item 2 shall be constructed in units of approximately 427-foot length or sectionalized in smaller lengths as the Research Contracting Officer may direct.

"2. It is agreed that the Contractor may produce any or all of the barges required under the contract at facilities other than the Wainwright Shipyard. The Contractor is not required to have available the facilities of the Wainwright Shipyard in the performance of the contract.

"3. The fixed fee of Nine Hundred Forty-Two Thousand Four Hundred and Seventy Dollars ($942,-470.00) provided to be paid the Contractor under the provisions of Clause 4 of the contract is hereby reduced by the amount of One Hundred Twelve Thousand Five Hundred Dollars ($112,500.00) to a revised fixed fee of Eight Hundred Twenty-Nine Thousand Nine Hundred Seventy Dollars ($829,970.00).

"4. The total estimated cost, Fourteen Million Nine Hundred Five Thousand Dollars ($14,905,-000.00) inclusive of fixed fee, is unchanged.

"5. The provisions of Clause 2 of the Contract providing for delivery of the barges at the Contractor's yard are amended to provide that the barges shall be delivered afloat at the construction shipyards.

"6. No salary, compensation, or expenses personal to Leon B. DeLong, other than the fixed fee, shall be reimbursed under the contract.

"7. Except as herein amended, all the terms, provisions and conditions of the Principal Contract shall remain and continue in full force and effect."

The reduction in the length of the barges to be built made it possible to produce such barges in shipyards other than the Wainwright Shipyard at Panama City, Florida.

On April 4, 1952, prior to Supplemental Agreement No. 2, Mr. DeLong advised defendant that inasmuch as the Transportation Corps now wished to reduce the length of the four long barges from 500 feet to 427 feet it was his desire to get completely out of the Wainwright Shipyard. Accordingly, it was agreed in paragraph No. 2 of Addendum No. 2, executed April 22, 1952, as follows:

"It is agreed that the contractor may produce any or all of the barges required under the contract at facilities other than the Wainwright Shipyard. The contractor is not required to have available the facilities of the Wainwright Shipyard in the performance of the contract."

1. Now 10 U.S.C.A. § 2305.

DeLong did not produce and did not fabricate any barges in the Wainwright Shipyard. The barges built under the contract were fabricated in established Gulf coast shipyards under subcontracts from DeLong.

On May 1, 1952, an agent of DeLong gave written notice of the lease cancellation to the Regional Director of the General Services Administration and to Seaboard Machinery Corporation as sublessor. Seaboard Machinery Corporation in turn gave similar notice of cancellation of the lease to General Services Administration on May 2, 1952.

On April 18, 1952, prior to Supplemental Agreement No. 2, plaintiff by letter requested that defendant incorporate a provision allowing DeLong reasonable expenses incurred in acquiring, maintaining, and disposing of his interest in Wainwright Shipyard. This request was denied by the contracting officer.

On May 12, 1952, plaintiff by letter requested the Department of the Army to obtain from the General Services Administration a waiver of expenses being incurred under the 90-day cancellation clause of the lease. This request was denied.

On September 15, 1954, plaintiff submitted a claim for reimbursement of the sum of $61,922.95. This sum plaintiff alleges was incurred pursuant to the provisions of the 90-day cancellation clause in the sublease of March 14, 1952.

The claim was submitted to the Comptroller General of the United States for a decision as to its legality and as to whether or not the Government should make reimbursement to the contractor. The Comptroller General ruled the claim "may not be paid."

Plaintiff appealed to the Armed Services Board of Contract Appeals, which Board in turn dismissed the contractor's appeal and this suit resulted.

The claim upon which plaintiff bases this suit is as follows:[2]

"Schedule I— Rental May 4, 1952 to Aug. 4, 1952 ......$27,867.00

"Schedule II— Guards, Firemen and Maintenance March 14, 1952 to Aug. 8, 1952 ........ 21,727.24

"Schedule III— Cancellation Charges, Fire and Extended Coverage Insurance— March 17, 1952 to Aug. 4, 1952 ........ 11,673.10

"Schedule IV— Workmen's Compensation—Apr. 2, 1952 to Aug. 4, 1952 and Comprehensive Liability April 2, 1952 to Aug. 4, 1952 ........................ 625.61

"Total ................................. 61,922.95"

It is plaintiff's position that the items of the above claim are properly reimbursable under the terms of the cost-plus-fixed-fee contract as expenses incurred in the performance thereof. It is defendant's position that the expenses are not properly reimbursable since (1) plaintiff incurred the cancellation charges before it ever had a contract; (2) allowance of the claim would violate the spirit of the applicable procurement regulation; (3) correspondence between the parties

2. The issue before this court is a question of liability. Inasmuch as there is some question as to whether plaintiff's voucher submitted September 15, 1954, has been audited by the Transportation Corps, plaintiff and defendant have agreed to submit to the court only the question of liability, with the further agreement that in the event plaintiff prevails in this motion for summary judgment the exact amount of liability will be settled between plaintiff and defendant.

and the Second Modification manifest the understanding that this claim is not an allowable cost; (4) waiver of the 90-day clause would constitute an unwarranted gratuity; (5) reimbursement would result in a duplication of rent, and thereby (6) serve to underwrite an option to buy realty.

In answer to defendant's first four contentions, it is conceded that the lease containing the 90-day cancellation was signed before the contract. However, an assurance that the facilities of the Wainwright Shipyard be available was incumbent upon plaintiff before the contract could be approved. This for the very obvious reason that only the Wainwright Shipyard was capable of producing 500-foot barges. Had the Wainwright's facilities been finally used in the construction, beyond question the items claimed for would be properly reimbursable under the contract.

Certainly reimbursement as here claimed would violate none of the terms of the First Modification which merely provided on this subject that the contractor would not be reimbursed for any cost incurred relative to major repair or rehabilitation of the Wainwright Shipyard. No claim is made for repair or rehabilitation, and since the facility was never used, probably no major repair was ever undertaken.

Nor would reimbursement violate the terms of the Second Modification which in addition to preserving the terms of the original contract and First Modification, merely provided that "no salary, compensation, or expenses personal to Leon B. DeLong, other than the fixed fee, shall be reimbursed under the contract." By no flight of the imagination could the present claim be defined as coming within the above provision.

Thus we return to the original contract which provides first that the fixed fee shall constitute complete compensation for the contractor's services "and such fee also includes all overhead expenses *not otherwise reimbursable hereunder*." The contract then provides what

expenditures will be reimbursable and provides as follows:

"The Government shall reimburse the Contractor upon submission of properly certified public vouchers to be supplied by the Government and approved by the Research Contracting Officer for its actual expenditures, including actual overhead costs incurred, necessary for and incurred in the performance of the work hereunder to be determined in accordance with the provisions of Section 15, Part 2 of the Armed Services Procurement Regulation in effect on the date of this contract, which regulation is hereby incorporated herein by reference. All wage and salary rates shall be subject to approval of the Research Contracting Officer before reimbursement for such wages or salaries will be made. The parties may, by modification to this contract, provide that any particular item of cost or type of cost shall be reimbursable or not reimbursable under this contract."

Section 15–201 of the Armed Services Procurement Regulation, referred to above, provided in part as follows:

"15–201. General Basis For Determination of Costs. The total cost of a cost-reimbursement type contract is the sum of the allowable direct costs incident to the performance of the contract, plus the properly allocable portion of allowable indirect costs, less applicable income and other credits. The tests used in determining the allowability of costs also include (i) reasonableness, (ii) application of generally accepted accounting principles and practices, and (iii) any limitations as to types or amounts of cost items set forth in this Part 2 of Section XV or otherwise included in the contract."

The tests therein specified are reasonableness, application of generally accepted accounting principles and practices, and any limitations as to types or amounts of cost items set forth in this

Part 2 of Section XV or otherwise included in the contract. Again we say the allowance of the claimed items violates none of the contract clauses or tests laid down by the regulations. It was an expense incurred incident to the performance of the contract. As a matter of fact, there would have been no contract had plaintiff not successfully followed the Government's instructions to acquire the Wainwright Shipyard and facilities.

When the contract was entered into, neither party knew exactly what the cost would be. Consequently, only one amount was fixed and that was the amount of plaintiff's fixed fee. The other expenses incident to the construction necessarily were to be recovered by plaintiff under the terms of the contract. It is just such an expense that is here claimed and which we believe should be allowed.

Defendant's contention that allowance of this claim would amount to a duplication of rental and also would serve to underwrite an option to buy realty is immaterial to this issue, since we are only concerned with the question as to whether the claimed costs are reimbursable under the contract.

In summary, the expenses claimed were incurred as a result of the Government's instructions and requirements. The fact that the facilities were not used was because of the Government's decision that the barges be reduced in size and also the modification provision that the contractor could produce in other shipyards and was not required to have available the facilities of the Wainwright Shipyards. In this respect the Government contemplated that plaintiff would subcontract and thereby reduced plaintiff's fixed fee by the amount of $112,500.

In the light of the foregoing, we firmly believe that the contractor would not have incurred the questioned costs but for the requirement of the Government, and such costs are allowable under the terms of the contract. Mason & Hanger Co. v. United States, 56 Ct.Cl. 238.

The fact that the facilities were never used is collateral to the issue. The change in size and change in shipyards was to the benefit of the Government and resulted in a substantial reduction in the fixed fee. Furthermore, the Government, through the General Services Administration, was asked to waive the 90-day cancellation clause in the lease. Had it so waived, as we believe it should, the expenses would not have been incurred. This is especially so inasmuch as the Government was the owner of the leased premises. Failure to waive left the contractor with the expenses paid and incurred in the performance of the contract, and we feel reimbursement should be made as a cost incident to the performance of the contract.

Plaintiff's motion for summary judgment is granted, and defendant's cross-motion is denied. The amount of recovery will be determined pursuant to Rule 38(c) of the rules of this court, 28 U.S.C.A.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.